IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

SARAH M. D.,[1] )
)
    Petitioner, )
)
vs. ) Civil No. 17-cv-903-CJP[2]
)
COMMISSIONER OF SOCIAL SECURITY, )
)
    Respondent. )
)

## MEMORANDUM and ORDER

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Sarah M. D., represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

## Procedural History

Plaintiff applied for benefits in March 2013 alleging disability beginning in January 2012. (Tr. 190). Plaintiff was denied benefits, and requested an evidentiary hearing, which was held in June 2016 by Administrative Law Judge (ALJ) George M. Bock. (Tr. 32). Plaintiff's application for benefits was denied. (Tr. 18-27). The Appeals Council denied review and the decision of the ALJ became the final agency decision. (Tr. 1-6). Plaintiff filed a timely complaint with this Court.

---

[1] In keeping with the Court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This matter was referred to the undersigned for final disposition upon consent of the parties, pursuant to 28 U.S.C. §636(c). See, Doc. 22.

## Issues Raised by Plaintiff

Plaintiff raises the specific issue that the ALJ committed reversible error by failing to account for plaintiff's moderate deficit in concentration, persistence, or pace (CPP) within the residual functional capacity (RFC) finding.

## Applicable Legal Standards

To qualify for DIB benefits, a claimant must be disabled within the meaning of the applicable statutes and regulations. For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step

> compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience. 20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three. If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Bock followed the five-step analytical framework described above. ALJ

Bock found plaintiff was insured through December 31, 2016, and he determined that plaintiff had not engaged in substantial gainful activity (SGA) since January 2012. The ALJ found plaintiff had severe impairments of depression, anxiety, posttraumatic stress disorder (PTSD), cervical degenerative disc disease, and migraine headaches. (Tr. 20). He also found plaintiff had moderate limitations in social function and in maintaining CPP. (Tr. 21). However, ALJ Bock determined none of plaintiff's impairments met or equaled the severity of a listed impairment. (Tr. 20).

ALJ Bock found plaintiff had the RFC to perform work at the light exertional level with several limitations, physical and mental. Relevant to plaintiff's issue, the mental limitations were that she can perform repetitive, unskilled, simple tasks with no complex instructions or interaction with the general public. (Tr. 22).

Based on plaintiff's earnings records and testimony from the vocational expert (VE), ALJ Bock found plaintiff was incapable of performing any past relevant work. However, he found other jobs existed in significant numbers within the national economy when considering plaintiff's age, education, work experience, and RFC. (Tr. 26).

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by plaintiff and is confined to the relevant time

period. As plaintiff addresses only her mental limitations, a discussion of the medical evidence related to her physical condition is unnecessary.

### 1. Agency Forms

Plaintiff was born in April 1975, and was thirty-six years old in January 2012 at the time of her alleged onset date. (Tr. 217). She attended special education classes during school and completed twelfth grade. Her relevant work experience includes being an assistant manager with loan and personal finance companies until December 2003. She began working as a home health assistant in January 2003 until she stopped working in April 2011 when her conditions became too much to manage. (Tr. 194-95).

Plaintiff, who was five feet six inches tall and one hundred seventy pounds, alleged the following disabling conditions: learning disability; severe migraines; nerve damage; and chronic pain. (Tr. 193). In May 2013, plaintiff was taking Hydrocodone for pain; Amantadine for pain; Lamotrigine for migraines; Levothyroxine for her thyroid; and Sertraline (Zoloft) for depression. (Tr. 196; 223). Plaintiff explained she has constant pain in her head, neck, and back. She said the pain can become overwhelming, and "when the pain takes over" she has trouble concentrating. (Tr. 227).

### 2. Evidentiary Hearing

Plaintiff was represented by counsel at the hearing. Plaintiff and a VE, Dan Zumalt, were both sworn and testified under oath. (Tr. 18-27).

ALJ Bock briefly asked plaintiff about her marital status, whether she had

6

children, her educational background, and her past work history. Regarding plaintiff's alleged disability, he only asked, "So what made it all of a sudden that you couldn't work in 2011?" Plaintiff responded, "The migraines and the pain [reached] the point where it was hard for me to handle anymore." (Tr. 36-37).

Plaintiff's counsel then examined her. Plaintiff testified she suffers from migraines two to three times a week that last all day despite taking migraine and pain medication. (Tr. 38-39). She approximated that she is incapacitated twelve days a month by her migraines and pain rendering her unable to get out of bed except to use the restroom. (Tr. 41). She testified her pain becomes overwhelming. (Tr. 43). She also experiences symptoms of depression and anxiety. Plaintiff takes an antidepressant that makes her sleepy. Because of her anxiety, she prefers to stay home and rarely drives; she still fears that she could get into another motor vehicle accident with a semi-truck.[3] (Tr. 40-41).

The ALJ interjected to clarify when plaintiff's wreck occurred. Plaintiff answered April 2004. She explained that although she worked after being involved in the wreck, her symptoms increasingly worsened making her ability to perform her home healthcare job difficult. (Tr. 42-43). She said that the "pain is to the point where I can't really focus. I'm very distracted easily." (Tr. 43-44).

ALJ Bock then called the VE, who affirmed he had reviewed plaintiff's work history. The ALJ provided the VE with a hypothetical that included physical and

---

[3] Plaintiff explains that the accident occurred in 2004. As a result of the semi-truck and its trailer striking her from behind, her head hit the steering wheel twice. She had a heavy concussion and her pituitary gland at the base of her brain was "kind of bruised." Her neck facets pinch a nerve in her spine. She also experiences spontaneous bleeding, and her left breast secretes a substance. She informed that she did not have these symptoms before the wreck. (Tr. 42).

7

mental limitations. Specifically, it included mental limitations that the individual would be "…limited to repetitive, unskilled simple work with no complex instructions. Should not have interaction with the general public." Based on his review of plaintiff's work history, the VE determined plaintiff could not perform her past work. However, the VE identified three types of work he thought plaintiff could perform: (1) inserting machine operator, which is "light, simple unskilled;" (2) folding machine operator, which is "light, simple unskilled;" and (3) collator operator, which is "light, simple unskilled." (Tr. 46-47).

### 3. Medical Evidence

The relevant treatment records indicate plaintiff suffers from chronic depression, insomnia, and post-traumatic migraine headaches in addition to other physical and neurological conditions resulting from a 2004 motor vehicle accident with a semi-truck and its trailer. (Tr. 332; 334; 337). By July 2013, plaintiff had endured posttraumatic migraines for approximately nine years. (Tr. 337). Related to her migraines, plaintiff reported being extremely phonophobic and photophobic. (Tr. 333). When she is affected by a migraine, she requires a dark quiet room to rest or sleep, as well as pain medication. (Tr. 344-45).

Plaintiff has several chronic problems, and she saw a number of different physicians, specialists, and medical professionals; however, Syed S. Ali, M.D. primarily treated her during the relevant time period, which included treatment of plaintiff's depression. He monitored and prescribed plaintiff Zoloft. (Tr. 331-42; 348-64). The medical records indicate she had a prescription and was taking

Zoloft in January 2011; however, it should be noted plaintiff reports taking Zoloft as early as 2004. (Tr. 289; 249). One of plaintiff's doctors, Mahendra Gunapooti, M.D., recorded that plaintiff used "…Zoloft…for her irritable symptoms from pain and [to] help with her sleep…" (Tr. 289). Additionally, Dr. Ali opined that plaintiff's medications could affect her attention and alertness. (Tr. 345).

### 4. State Agency Consultative Psychological Examination

Plaintiff met with Stephen G. Vincent, Ph.D. in August 2013 for a psychological examination. (Tr. 311-14). Dr. Vincent determined plaintiff was oriented in all areas. She is slow and deliberate cognitively, yet logical and relevant. Although she could be redirected easily, her speech was at times preoccupied by her conditions. (Tr. 312). He listed plaintiff's diagnoses as PTSD; Major Depression with Anxious Distress; and Generalized Anxiety Disorder. (Tr. 313-14).

Dr. Vincent noted plaintiff has lingering indicators of PTSD in that she becomes nervous and anxious when asked to drive or ride in a motor vehicle. As a result, she limits her travel. (Tr. 313). Her depression is comorbid; it is caused both by her inability to function as she had in the past, and also by her suffering from relentless chronic pain. (Tr. 312). Plaintiff also reported disturbances in sleep, poor concentration, and being indecisive. At times she has difficulties staying focused on tasks, and she needs notes and reminders to maintain personal obligations and responsibilities. (Tr. 311-12).

### 5. State Agency Consultants' Mental RFC Assessment

9

In September 2013, Howard Tin, Psy.D. completed the initial Psychiatric Review Technique Form (PRTF) and a mental residual functional capacity assessment ("MRFCA" or "MRFC") form. In the PRTF, under the "'B' Criteria of the Listings" section, Dr. Tin determined plaintiff had mild restrictions with activities of daily living, but that she had moderate difficulties with maintaining social functioning and in maintaining CPP. Under the PRT-Additional Explanation section, Dr. Tin wrote, "See MRFC." (Tr. 54).

Next, in the first part of the MRFCA, under "MRFC1," Dr. Tin rated plaintiff's limitations in four distinctly separate areas: (1) understanding and memory; (2) sustained concentration and persistence; (3) social interaction; and (4) adaptation. (Tr. 57-59). Of issue here, is the second area of limitations related to sustained concentration and persistence. (Tr. 57-58).

Under his rating of plaintiff's sustained concentration and persistence limitations, Dr. Tin found that plaintiff's moderate CPP limitations included moderate difficulties with (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; and (3) working in coordination with or in proximity to others without being distracted by them. (Tr. 58).

Dr. Tin did not utilize the individual explanation areas immediately under each MRFC1 finding as instructed. Rather, he wrote, "See below" in each area. Under the "MRFC-Additional Explanation" section, Dr. Tin made five distinct headings with narratives. Four headings corresponded with the four areas he indicated in the MRFC1 with the addition of a fifth heading titled, "Credibility."

(Tr. 59).

Under the "Sustained Concentration and Persistence" heading, Dr. Tin acknowledged plaintiff's reports and mentioned a few of Dr. Vincent's findings. He then summarily concluded his "Sustained Concentration and Persistence" heading under the "MRFC-Additional Explanation" section by providing, "[Plaintiff] has difficulty **carrying out detailed instructions** and **maintaining attention and concentration for extended periods of time**, however the person is capable of performing simple tasks." (emphasis added) (Tr. 59). There was absolutely no mention of his third sustained concentration and persistence MRFC1 finding that plaintiff was moderately limited in her ability to work in coordination with or in proximity to others without being distracted by them. (See, Tr. 58; 59).

Ralph Robinowitz, Ph.D. completed a second PRTF and MRFC assessment in May 2014. Other than his name and the date, Dr. Robinowitz's MRFC was identical to Dr. Tin's 2013 MRFC. (Compare, Tr. 57-59 to 73-75).

## Analysis

Plaintiff specifically argues the ALJ failed to account for moderate CPP deficits in the RFC finding, and that his failure to do so resulted in a failure to build an accurate and logical bridge between the evidence of mental impairments and both the hypothetical posed to the VE and his ultimate RFC finding. Defendant counters by arguing that the ALJ's RFC accounted for plaintiff's CPP limits because the ALJ reasonably relied upon two agency consultants' mental

11

RFC findings. For the reasons set forth below, the Court agrees with plaintiff.

"As a general rule, both the hypothetical posed to the VE and the ALJ's RFC assessment must incorporate all of the [plaintiff's] limitations supported by the medical record." *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. *See*, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009)(collecting cases). "This includes any deficiencies the [plaintiff] may have in concentration, persistence, or pace." *Id*. Although there is no *per se* requirement that the phrase "concentration, persistence and pace" be utilized, the restriction to simple, repetitive tasks or to unskilled work is not ordinarily an adequate substitute. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 858; *O'Connor-Spinner*, 627 F.3d 614, 620 (7th Cir. 2010) and cases cited therein.

Here, ALJ Bock found plaintiff had moderate limitations in maintaining CPP at step three of the sequential analysis when determining whether plaintiff's mental impairments met or equaled a listed impairment. (Tr. 21). ALJ Bock correctly recognized step three is not a mental RFC assessment, but he said that the ultimate RFC assessment would reflect the degree of restriction he assessed for plaintiff's moderate CPP limitations. Further, ALJ Bock even afforded the agency consultants' opinions that plaintiff had moderate limitations in CPP "some weight." (Tr. 25; 57-59; 73-75). However, neither the hypothetical question posed to the VE nor the RFC assessment mentioned a moderate limitation in CPP. Rather, ALJ Bock's hypothetical to the VE limited plaintiff, "…to repetitive,

12

unskilled simple work with no complex instructions. Should not have interaction with the general public." (Tr. 46). ALJ Bock's ultimate RFC finding similarly restricted plaintiff to "…repetitive, unskilled, simple tasks with no complex instructions or interaction with the general public…" (Tr. 21; 22).

As outlined above, the Seventh Circuit Court of Appeals has repeatedly held that a limitation to unskilled work or simple instructions does not account for a limitation in concentration, persistence or pace. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 858; *O'Connor-Spinner*, 627 F.3d 614, 620 (7th Cir. 2010), and cases cited therein. Instead, those limitations account for the speed at which work can be learned. See 20 C.F.R. §§ 404.1568, 404.1520. As the Seventh Circuit has explained, "…[T]he speed at which work can be learned is unrelated to whether a person with mental impairments—i.e., difficulties maintaining concentration, persistence, or pace—can perform such work. *See Yurt*, 758 F.3d at 858–59 (rejecting the notion that "confining the claimant to simple, routine tasks and limited interactions with others adequately captures temperamental deficiencies and limitations in concentration, persistence, and pace"); *Stewart v. Astrue*, 561 F.3d 679, 685 (7th Cir. 2009); *Craft v. Astrue*, 539 F.3d 668, 677–78 (7th Cir. 2008)." *Lanigan*, 865 F.3d at 565–66.

This is where the Commissioner asserts that ALJ Bock's RFC assessment accounted for plaintiff's CPP limitations because he properly relied upon Dr. Tin's 2013 and Dr. Robinowitz's 2014 identical narrative translations of their MRFC1 findings. (Compare, Tr. 57-59 to 73-75). The Commissioner selectively cites a

13

portion of *Varga* to support the proposition that "…an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations." (See, Doc. 18 at 6). However, the full section of *Varga* that the Commissioner omitted from the cited portion reads:

> Worksheet observations, while perhaps less useful to an ALJ than a doctor's narrative RFC assessment, are nonetheless medical evidence which cannot just be ignored. True, in some cases, an ALJ may rely on a doctor's narrative RFC, rather than the checkboxes, where that narrative adequately encapsulates and translates those worksheet observations. See *Johansen*, 314 F.3d at 286. But where, as here, no narrative translation exists— because of error on the part of the doctor or the agency—an ALJ's hypothetical question to the VE **must** take into account any moderate difficulties in mental functioning found in Section I of the MRFCA form including those related to concentration, persistence, or pace.

*(*emphasis added*) Varga*, 794 F.3d at 816. In other words, under *Varga*, a consultant's MRFC1 findings are part of the medical records, and they cannot simply be ignored by an ALJ. Where, however, the agency consultant's narrative assessment "adequately encapsulates and translates" the CPP limitations, the ALJ may rely on the narrative instead of specifically referencing concentration, persistence, or pace. *Varga*, 794 F.3d at 816.[4]

Here, the Commissioner acknowledged that both consultants' MRFC1 sections included that plaintiff had moderate CPP difficulties with (1) carrying out detailed instructions; (2) maintaining attention and concentration for extended periods; and (3) working in coordination with or in proximity to others without

---

[4] In *Varga*, there was no narrative translation available because the form had been either lost or never completed by the agency's reviewing consultant. 794 F.3d at 816. Here, however, a narrative exists, but the narrative does not provide an adequate translation of the MRFC1 observations.

14

being distracted by them. (Tr. 57-58; 74). The Commissioner contends that their MRFC1 observations are accounted for in the "MRFC-Additional Explanation" sections, which in relevant part reads:

> Sustained Concentration and Persistence
> Claimant can carry out short and simple instructions but claims that claimant has a short attention span, cannot complete tasks and has problems following spoken and written instructions…Claimant has difficulty **carrying out detailed instructions** and **maintaining attention and concentration for extended periods of time**, however the person is capable of performing **simple tasks**.

(emphasis added). (Tr. 59; 75). Within their "MRFC-Additional Explanation" sections, it is clear that there is no mention of restrictions related to plaintiff's moderate limitation to maintain CPP.

Essentially, the Commissioner glosses over the Seventh Circuit's clear statement that MRFC1 observations constitute medical evidence that cannot simply be ignored. Here, specifically, neither consultant even mentioned their MRFC1 finding that plaintiff is limited in her ability to work in coordination with or in proximity to others without being distracted by them. (Tr. 58; 74). ALJ Bock's decision does not address these MRFC1 findings either. (See, Tr. 22-25). Because medical evidence in the MRFC1 was ignored, the "MRFC-Additional Explanation" narratives are inconsistent with the MRFC1 sections.

Further, the Commissioner failed to pay sufficient attention to the Seventh Circuit's admonition that the ALJ can rely on a consultant's narrative statement only where it "adequately encapsulates and translates" the MRFC1 findings. The Commissioner argues that both Dr. Tin and Dr. Robinowitz "translated" their

15

MRFC1 findings into a narrative assessment by stating that plaintiff should be limited to simple tasks. Again, the Seventh Circuit has repeatedly rejected that simple tasks account for moderate CPP limitations. *Varga v. Colvin*, 794 F.3d 809, 814 (7th Cir. 2015); *Yurt*, 758 F.3d at 858; *O'Connor-Spinner*, 627 F.3d 614, 620 (7th Cir. 2010), and cases cited therein. The consultants here failed to provide any analytical discussion or rationale in their "MRFC-Additional Explanation" sections that would allow this Court to accept their conclusive statements as adequate translations. Based on the foregoing, any argument by the Commissioner that ALJ Bock reasonably relied upon Dr. Tin's and Dr. Robinowitz's narratives in crafting the hypothetical and in determining the RFC is wholly unpersuasive.

In trying to persuade this Court, the Commissioner also cited to *Johansen v. Barnhart*, 314 F.3d 283 (7th Cir. 2002), *Milliken v. Astrue*, 397 F.App'x 218 (7th Cir. 2010), and *Capman v. Colvin*, 617 Fed.Appx. 575 (7th Cir. July 1, 2015), where the Seventh Circuit Court of Appeals excused the ALJs' failures to address certain mental limitations because the consultant in each respective case effectively translated those findings into a specific RFC assessment. However, this case is distinguishable from *Johansen*, *Milliken*, and *Capman* for precisely those reasons. Here, the agency consultants' narratives did not adequately translate their MRFC1 findings. Therefore, ALJ Bock could not reasonably rely upon their narratives.

In sum, ALJ Bock found that plaintiff had moderate limitations in

maintaining CPP. He said that his RFC assessment would reflect those limitations; it did not. The Commissioner argues that the agency consultants adequately translated their MRFC findings into a narrative; they did not. The Commissioner argues ALJ Bock reasonably relied upon the consultants' "translated" narratives; he could not. The Commissioner asserts ALJ Bock's RFC assessment is supported by substantial evidence; based on all of the above, it was not.

Following binding Seventh Circuit precedent, such as *Yurt*, *O'Connor-Spinner*, *Varga*, and that line of cases, this Court must conclude that the ALJ failed to build the requisite accurate and logical bridge between the evidence of mental impairments and the hypothetical and the mental RFC. Therefore, this case must be remanded.

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that she should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Sarah M. D.'s application for DIB is **REVERSED** and **REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

17

**IT IS SO ORDERED**.

**DATE:** **July 11, 2018.**

**s/ Clifford J. Proud**
**CLIFFORD J. PROUD**
**UNITED STATES MAGISTRATE JUDGE**
